**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC,<br>Plaintiff,<br>V.<br>ROAD READY, LLC and<br>DAVCO TECHNOLOGY, LLC,<br>Defendants. | Civil Action No. _______________<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Fleet Connect Solutions LLC ("Fleet Connect" or "Plaintiff") files this complaint against Road Ready, LLC ("Road Ready") and DAVCO Technology, LLC ("DAVCO") (collectively, "Defendants") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This is a patent infringement action to stop Defendants' infringement of the following United States Patents (collectively, the "Asserted Patents"):

| | Patent Number | Title | Available At |
|---|---|---|---|
| 1 | 7,058,040 | Channel Interference Reduction | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7058040 |

| | Patent Number | Title | Available At |
|---|---|---|---|
| 2 | 7,742,388 | Packet Generation Systems and Methods | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7742388 |
| 3 | 7,656,845 | Channel Interference Reduction | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7656845 |
| 4 | 7,260,153 | Multi Input Multi Output Wireless Communication Method and Apparatus Providing Extended Range and Extended Rate Across Imperfectly Estimated Channels | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7260153 |
| 5 | 7,206,837 | Intelligent Trip Status Notification | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7206837 |
| 6 | 7,593,751 | Conducting Field Operations Using Handheld Data Management Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7593751 |
| 7 | 6,961,586 | Field Assessments Using Handheld Data Management Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6961586 |
| 8 | 8,494,581 | System and Methods for Management of Mobile Field Assets via Wireless and Held Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8494581 |
| 9 | 6,647,270 | Vehicletalk | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6647270 |

| | Patent Number | Title | Available At |
|---|---|---|---|
| 10 | 7,741,968 | System and Method for Navigation Tracking of Individuals in a Group | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7741968 |

2. Plaintiff seeks monetary damages.

## PARTIES

3. Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4. Based on public information, Defendant Road Ready, LLC is a limited liability company organized under the laws of the State of Michigan with its principal place of business located at 20600 Civic Center Drive, Southfield, Michigan 48076. Road Ready, LLC is a subsidiary of Clarience Technologies, LLC.

5. Based on public information, Road Ready, LLC may be served through its resident agent for service of process, C T Corporation System, 40600 Ann Arbor Road E, Suite 201, Plymouth, MI 48175-4675.

6. Based on public information, Defendant DAVCO Technology, LLC is a limited liability company with its principal place of business located at 1600 Woodland Drive, Saline, Michigan 48176. DAVCO Technology, LLC is a subsidiary of Clarience Technologies, LLC.

7. Based on public information, DAVCO Technology, LLC may be served through its resident agent for service of process, The Corporation Company, 40600 Ann Arbor Road E, Suite 201, Plymouth, MI 48175-4675.

## JURISDICTION AND VENUE

8. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

9. This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

10. Venue is proper against Road Ready, LLC in this District pursuant to 28 U.S.C. § 1400(b) and § 1391(c) because Road Ready, LLC is a limited liability company organized under the laws of the State of Michigan and therefore resides in this District, and because it has committed acts of patent infringement in this District.

11. Venue is proper against DAVCO Technology, LLC in this District pursuant to 28 U.S.C. § 1400(b) because DAVCO has committed acts of patent infringement in this District and has a regular and established place of business in this District at 1600 Woodland Drive, Saline, Michigan 48176. See In re: Cray Inc., 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

12. DAVCO makes the Accused Products in this District. DAVCO states publicly that it "builds every proprietary sensor that enables Road Ready and

Fleetilla's advanced telematics solutions at our Advanced Electronics Manufacturing Center in Saline, Michigan," and identifies the products built at that facility to include the master control unit (MCU) with GPS, the cargo sensor, the temperature sensor, the door sensor, the warning sensor, the SmartBridge integrator, and the light-out detection system. Clarience Technologies, LLC identifies the Saline facility as the "Road Ready Manufacturing Facility."

13. The Saline facility is a physical place in this District at which DAVCO carries on its business. It houses a surface-mount technology production line providing printed circuit board assembly, solder paste inspection, pick-and-place placement, reflow, automated optical inspection, flying-probe electrical testing, conformal coating, and a clean room for component manufacturing. A $3.5 million capital investment in the facility was announced on January 4, 2022, the facility is ISO 14001 certified, and DAVCO houses its engineering, manufacturing, quality, and warranty operations at that single location.

14. Road Ready, LLC maintains its headquarters in this District at 20600 Civic Center Drive, Southfield, Michigan 48076, from which it advertises, offers for sale, and sells the Accused Products.

15. Defendants offer products and services, including through the manufacture, sale, importation, use, and/or testing of Accused Products, and conduct business in this District.

16. Defendants are subject to this Court's specific and general personal jurisdiction under due process due at least to Defendants' substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Michigan and in this District; (iii) having an interest in, using or possessing real property in Michigan and this District; and (iv) having and keeping personal property in Michigan and in this District.

17. Specifically, Defendants intend to do and do business in, have committed acts of infringement in, and continue to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offer their products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District.

18. Defendants commit acts of infringement from this District, including, but not limited to, making, importing, selling, offering for sale, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

## THE ASSERTED PATENTS AND ACCUSED PRODUCTS

19. Fleet Connect repeats and re-alleges the allegations in the Paragraphs

above as though fully set forth in their entirety.

20. Based upon public information, Defendants own, operate, advertise, and/or control the websites https://roadready.com/, https://us.fleetilla.com/, and https://davco.com/ through which they advertise, sell, offer to sell, provide and/or educate customers about their products and services.

21. Defendants make, use, cause to be used, sell, offer for sale, import, provide, supply, and/or distribute one or more fleet management platform and tracking solutions under the brand names and/or trade names "Road Ready," "Fleetilla," and "DAVCO," including, but not limited to, the FL 940, FL 950, FLEX 600, FLEX 603, FL1260, FL1265, ORB9, SmartOne Solar, Road Ready Master Control Unit (MCU), Road Ready Cargo Sensor, Road Ready Temperature Sensor, Road Ready Door Sensor, Road Ready Warning Sensor, The SmartBridge Integrator, TrackRR Lite, Light-Out Detection System, temperature sensor, humidity sensor, J1939/OBDII interface modules, analog voltage and current sensor, driver apps (such as FleetFORMZ), Fleet Management application/software/website (including FleetFACTZ, the Fus1on platform, LogIQ, and Road Ready fleet management including Track & Trace, Detention Monitoring, Cargo Management, Door Open Status, Cargo Security, Temperature Monitoring, Wheel-End Health, Tire Health, ABS Monitoring, Light Out Detection, and Mileage Monitoring), and other substantially similar products and services offered in the past or the future, and

all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products"). See Exhibits A–J (Evidence of Use Regarding Infringement of the Asserted Patents).

22. Defendants, using the Accused Products, perform wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various protocols and implementations, including, but not limited to, Bluetooth, IEEE 802.11, and LTE protocols and various subsections thereof, including, but not limited to, 802.11b and 802.11n.

23. The wireless communications performed and/or implemented by Defendants using, e.g., the Accused Products, among other things, generate and transmit packets for wireless communications and communicate data via a plurality of wireless transceivers using a plurality of wireless protocols, and encode data pursuant to one or more of those wireless protocols.

24. Defendants, using the Accused Products, perform singular value decomposition of estimated channel matrices, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed

("OFDM") receivers, and various methods of processing OFDM symbols.

25. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,058,040

26. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

27. The USPTO duly issued U.S. Patent No. 7,058,040 (the "'040 patent") on June 6, 2006, after full and fair examination of Application No. 09/962,718, which was filed on September 21, 2001.

28. Fleet Connect owns all substantial rights, interest, and title in and to the '040 patent, including the sole and exclusive right to prosecute this action and enforce the '040 patent against infringers and to collect damages for all relevant times.

29. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '040 patent.

30. The claims of the '040 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods of transmitting data over media having

overlapping frequencies.

31. The written description of the '040 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

32. Defendants have directly infringed one or more claims of the '040 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

33. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '040 patent, as detailed in Exhibit A (Evidence of Use Regarding Infringement of U.S. Patent No. 7,058,040).

34. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,742,388

35. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

36. The USPTO duly issued U.S. Patent No. 7,742,388 (the "'388 patent") on June 22, 2010, after full and fair examination of Application No. 11/185,665, which was filed on July 20, 2005.

37. Fleet Connect owns all substantial rights, interest, and title in and to the '388 patent, including the sole and exclusive right to prosecute this action and enforce the '388 patent against infringers and to collect damages for all relevant times.

38. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '388 patent.

39. The claims of the '388 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

40. The written description of the '388 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

41. Defendants have directly infringed, and continue to directly infringe, one or more claims of the '388 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

42. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '388 patent, as detailed in Exhibit B (Evidence of Use Regarding Infringement of U.S. Patent No. 7,742,388).

43. Defendants had knowledge of the '388 patent at least as of the date Defendants were notified of the filing of this action.

44. Since at least the time of receiving the complaint, Defendants have indirectly infringed and continue to indirectly infringe the '388 patent by inducing others to directly infringe the '388 patent. Defendants have induced and continue to induce customers and end-users, including, but not limited to, Defendants' customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '388 patent by providing or requiring use of the Accused Products. Defendants have taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '388 patent, including, for example, claim 1. See Exhibit B.

45. Such steps by Defendants have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused

Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support to users. Defendants have been performing these steps, which constitute induced infringement with the knowledge of the ’388 patent and with the knowledge that the induced acts constitute infringement. Defendants have been aware that the normal and customary use of the Accused Products by others would infringe the ’388 patent. Defendants’ inducement is ongoing. See Exhibit B.

46. Since at least the time of receiving the complaint, Defendants have indirectly infringed and continue to indirectly infringe by contributing to the infringement of the ’388 patent. Defendants have contributed and continue to contribute to the direct infringement of the ’388 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’388 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the ’388 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants’ contributory infringement is ongoing. See Exhibit B.

47. Furthermore, on information and belief, Defendants have a policy or

practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Fleet Connect's patent rights.

48. Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

49. Defendants' infringement of the '388 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

50. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III: <u>INFRINGEMENT OF U.S. PATENT NO. 7,656,845</u>**

51. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

52. The USPTO duly issued U.S. Patent No. 7,656,845 (the "'845 patent") on February 2, 2010, after full and fair examination of Application No. 11/402,172, which was filed on April 11, 2006. A Certificate of Correction was issued on

November 30, 2010.

53. Fleet Connect owns all substantial rights, interest, and title in and to the ’845 patent, including the sole and exclusive right to prosecute this action and enforce the ’845 patent against infringers and to collect damages for all relevant times.

54. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’845 patent.

55. The claims of the ’845 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of wireless communication with a mobile unit.

56. The written description of the ’845 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

57. Defendants have directly infringed one or more claims of the ’845 patent by making, using, selling, offering to sell, importing, and/or internal and

external testing of the Accused Products.

58. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the ’845 patent, as detailed in Exhibit C (Evidence of Use Regarding Infringement of U.S. Patent No. 7,656,845).

59. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,260,153

60. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

61. The USPTO duly issued U.S. Patent No. 7,260,153 (the “’153 patent”) on August 21, 2007, after full and fair examination of Application No. 10/423,447, which was filed on April 28, 2003.

62. Fleet Connect owns all substantial rights, interest, and title in and to the ’153 patent, including the sole and exclusive right to prosecute this action and enforce the ’153 patent against infringers and to collect damages for all relevant times.

63. Fleet Connect or its predecessors-in-interest have satisfied all statutory

obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’153 patent.

64. The claims of the ’153 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

65. The written description of the ’153 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

66. Defendants have directly infringed one or more claims of the ’153 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

67. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the ’153 patent, as detailed in Exhibit D (Evidence of Use Regarding Infringement of U.S. Patent No. 7,260,153).

68. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than

a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,206,837**

69. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

70. The USPTO duly issued U.S. Patent No. 7,206,837 (the "'837 patent") on April 17, 2007, after full and fair examination of Application No. 10/287,151, which was filed on November 4, 2002.

71. Fleet Connect owns all substantial rights, interest, and title in and to the '837 patent, including the sole and exclusive right to prosecute this action and enforce the '837 patent against infringers and to collect damages for all relevant times.

72. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '837 patent.

73. The claims of the '837 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

74. The written description of the '837 patent describes in technical detail

each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

75. Defendants have directly infringed one or more claims of the ’837 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

76. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the ’837 patent, as detailed in Exhibit E (Evidence of Use Regarding Infringement of U.S. Patent No. 7,206,837).

77. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,593,751**

78. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

79. The USPTO duly issued U.S. Patent No. 7,593,751 (the “’751 patent”) on September 29, 2009, after full and fair examination of Application No.

11/262,699, which was filed on October 31, 2005.

80. Fleet Connect owns all substantial rights, interest, and title in and to the ’751 patent, including the sole and exclusive right to prosecute this action and enforce the ’751 patent against infringers and to collect damages for all relevant times.

81. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’751 patent.

82. The claims of the ’751 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

83. The written description of the ’751 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

84. Defendants have directly infringed one or more claims of the ’751 patent by making, using, selling, offering to sell, importing, and/or internal and

external testing of the Accused Products.

85. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 6 of the ’751 patent, as detailed in Exhibit F (Evidence of Use Regarding Infringement of U.S. Patent No. 7,593,751).

86. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 6,961,586

87. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

88. The USPTO duly issued U.S. Patent No. 6,961,586 (the “’586 patent”) on November 1, 2005, after full and fair examination of Application No. 09/955,543, which was filed on September 17, 2001. A Certificate of Correction was issued on June 25, 2013.

89. Fleet Connect owns all substantial rights, interest, and title in and to the ’586 patent, including the sole and exclusive right to prosecute this action and enforce the ’586 patent against infringers and to collect damages for all relevant times.

90. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’586 patent.

91. The claims of the ’586 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

92. The written description of the ’586 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

93. Defendants have directly infringed one or more claims of the ’586 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

94. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 9 of the ’586 patent, as detailed in Exhibit G (Evidence of Use Regarding Infringement of U.S. Patent No. 6,961,586).

95. Fleet Connect has been damaged as a result of the infringing conduct

by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VIII: <u>INFRINGEMENT OF U.S. PATENT NO. 8,494,581</u>**

96. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

97. The USPTO duly issued U.S. Patent No. 8,494,581 (the "'581 patent") on July 23, 2013, after full and fair examination of Application No. 12/547,363, which was filed on August 25, 2009.

98. Fleet Connect owns all substantial rights, interest, and title in and to the '581 patent, including the sole and exclusive right to prosecute this action and enforce the '581 patent against infringers and to collect damages for all relevant times.

99. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '581 patent.

100. The claims of the '581 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function

and operation of preexisting methods and systems of collecting and communicating field data based on geographical location.

101. The written description of the ’581 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

102. Defendants have directly infringed one or more claims of the ’581 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

103. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claims 21 and 22 of the ’581 patent, as detailed in Exhibit H (Evidence of Use Regarding Infringement of U.S. Patent No. 8,494,581).

104. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IX: <u>INFRINGEMENT OF U.S. PATENT NO. 6,647,270</u>

105. Fleet Connect repeats and re-alleges the allegations in the Paragraphs

above as though fully set forth in their entirety.

106. The USPTO duly issued U.S. Patent No. 6,647,270 (the "'270 patent") on November 11, 2003, after full and fair examination of Application No. 09/659,074, which was filed on September 11, 2000.

107. Fleet Connect owns all substantial rights, interest, and title in and to the '270 patent, including the sole and exclusive right to prosecute this action and enforce the '270 patent against infringers and to collect damages for all relevant times.

108. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '270 patent.

109. The claims of the '270 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of mobile communications and tracking systems.

110. The written description of the '270 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

111. Defendants have directly infringed one or more claims of the ’270 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

112. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the ’270 patent, as detailed in Exhibit I (Evidence of Use Regarding Infringement of U.S. Patent No. 6,647,270).

113. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT X: <u>INFRINGEMENT OF U.S. PATENT NO. 7,741,968</u>**

114. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

115. The USPTO duly issued U.S. Patent No. 7,741,968 (the “’968 patent”) on June 22, 2010, after full and fair examination of Application No. 12/143,707, which was filed on June 20, 2008.

116. Fleet Connect owns all substantial rights, interest, and title in and to the ’968 patent, including the sole and exclusive right to prosecute this action and enforce the ’968 patent against infringers and to collect damages for all relevant

times.

117. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’968 patent.

118. The claims of the ’968 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of systems and methods for permissive navigational tracking where the sending party selectively transmits navigation data to a receiving party over a period of time.

119. The written description of the ’968 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

120. Defendants have directly infringed, and continue to directly infringe, one or more claims of the ’968 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

121. Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 4 of the ’968 patent, as detailed in Exhibit J (Evidence

of Use Regarding Infringement of U.S. Patent No. 7,741,968).

122. Defendants had knowledge of the ’968 patent at least as of the date Defendants were notified of the filing of this action.

123. Since at least the time of receiving the complaint, Defendants have indirectly infringed and continue to indirectly infringe the ’968 patent by inducing others to directly infringe the ’968 patent. Defendants have induced and continue to induce customers and end-users, including, but not limited to, Defendants’ customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the ’968 patent by providing or requiring use of the Accused Products. Defendants have taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the ’968 patent, including, for example, claim 4. See Exhibit J.

124. Such steps by Defendants have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support to users. Defendants have been performing these steps, which constitute induced infringement with the knowledge of the ’968 patent and with the knowledge that the

induced acts constitute infringement. Defendants have been aware that the normal and customary use of the Accused Products by others would infringe the ’968 patent. Defendants’ inducement is ongoing. See Exhibit J.

125. Since at least the time of receiving the complaint, Defendants have indirectly infringed and continue to indirectly infringe by contributing to the infringement of the ’968 patent. Defendants have contributed and continue to contribute to the direct infringement of the ’968 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’968 patent, including, for example, claim 4. The special features constitute a material part of the invention of one or more of the claims of the ’968 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendants’ contributory infringement is ongoing. See Exhibit J.

126. Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Fleet Connect’s patent rights.

127. Defendants’ actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have

been known by Defendants.

128. Defendants' infringement of the '968 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

129. Fleet Connect has been damaged as a result of the infringing conduct by Defendants alleged above. Thus, Defendants are liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## DEMAND FOR JURY TRIAL

130. Fleet Connect hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

131. WHEREFORE, Fleet Connect requests that the Court find in its favor and against Defendants, and that the Court grant Fleet Connect the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendants or others acting in concert therewith;

b. Judgment that Defendants account for and pay to Fleet Connect all damages to and costs incurred by Fleet Connect because of Defendants'

infringing activities and other conduct complained of herein;

c. Judgment that Defendants' infringement of the '388 patent and the '968 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d. Pre-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

e. That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

f. All other and further relief as the Court may deem just and proper under the circumstances.

Respectfully submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

By: /s/Andrew M. Grove
Andrew M. Grove (P48868)
450 West Fourth Street
Royal Oak, Michigan 48067-2557
Phone: (248) 723-0343
Fax: (248) 645-1568
Email: jg@h2law.com

James F. McDonough, III (GA 117088) *
Jonathan R. Miller (GA 507179) *
Rozier Hardt McDonough PLLC
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866, -1863
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
Rozier Hardt McDonough PLLC
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com
Email: sujeeth@rhmtrial.com

Dated: September 15, 2026

***Attorneys for FLEET CONNECT SOLUTIONS LLC***

*Pro hac vice application to be filed

**List of Exhibits**

A. Evidence of Use Regarding Infringement of U.S. Patent No. 7,058,040
B. Evidence of Use Regarding Infringement of U.S. Patent No. 7,742,388
C. Evidence of Use Regarding Infringement of U.S. Patent No. 7,656,845
D. Evidence of Use Regarding Infringement of U.S. Patent No. 7,260,153

E. Evidence of Use Regarding Infringement of U.S. Patent No. 7,206,837
F. Evidence of Use Regarding Infringement of U.S. Patent No. 7,593,751
G. Evidence of Use Regarding Infringement of U.S. Patent No. 6,961,586
H. Evidence of Use Regarding Infringement of U.S. Patent No. 8,494,581
I. Evidence of Use Regarding Infringement of U.S. Patent No. 6,647,270
J. Evidence of Use Regarding Infringement of U.S. Patent No. 7,741,968